Oye v. Hartford Life and Accident Insurance Company Oye v. Hartford Life and Accident Insurance Company Mr. Dubofsky Good morning and may it please the court. My name is Mark Dubofsky. I represent the plaintiff appellant Olayinka Oye. The district court opinion rendered in this matter was not plausible in light of the record viewed in its entirety and was therefore plainly erroneous, clearly erroneous rather, for at least five reasons. One, the district court viewed the benefit termination decision in a vacuum, ignoring prior findings made by Hartford and relying on discredited evidence such as the 2016 functional capacity evaluation. Two, the court discredited Ms. Oye's doctors without justification, even though Hartford had previously deemed such evidence reliable and their records were comparable to the same wording in medical reports that this court found credible in Sarche, Hawkins, and Kennedy. The other consideration is that the court apparently did not recognize that fibromyalgia does not produce laboratory findings that would be indicative of a musculoskeletal impairment or a neurological impairment. And the one objective finding, the trigger points, was found throughout the records by the physicians at Northwestern University. Third, the district court focused on sedentary physical capacity but ignored the other aspects of Ms. Oye's position, which was highly cognitive. This court ruled in two prior cases, Lackow and Scanlon, that it's not enough to consider the physical aspects of a job, but the cognitive aspects of the job also have to be taken into consideration. The court failed to address at all whether Ms. Oye could perform complex mental tasks and travel extensively or do any kind of meaningful work while suffering from the pain and fatigue that is recounted throughout the records, not only by Ms. Oye to her physicians, but the witness statements that were submitted as part of the record. Fourth, the district court ignored Hartford's consultants' patent bias against fibromyalgia. The reports that were issued by Hartford's consultants all showed an apparent bias against fibromyalgia or ignorance. The first report, Dr. Clinton, considered conditions other than fibromyalgia. There was no contention that there were any other disabling conditions other than fibromyalgia. Dr. Singh, who purports to be a rheumatologist, stated that fibromyalgia is not a rheumatic disease, even though this court found in Sarche v. Chater that it is a rheumatic disease, and the American College of Rheumatology says the same. And the other doctor, Dr. Fung, who recognized that the complaints of pain and fatigue were consistent throughout the record, his problem was that there were no objective physical findings other than the trigger points, which, of course, in Preston v. HHS from the Sixth Circuit, as well as this court's decisions in Sarche, Hawkins, and Kennedy, say just the opposite. And finally, the district court opinion made no reference whatsoever to this court's precedents regarding fibromyalgia. There is not a word in the lower court's decision about Sarche, Hawkins, Chater, Holmstrom, which dealt with the issue of pain. Scanlon, Lackow, none of those cases were cited. In other words, the court issued a decision in a complete vacuum. Now, we acknowledge that the court's obligation was to issue an independent decision. This was an ERISA case decided under the de novo standard of review, meaning what happened before the plan administrator was not necessarily relevant. We agree with that, but there has to be some consideration, based on the Ledger v. Tribune case, of the history of this claim. Ms. Oye was found disabled by Hartford in 2017 based on Hartford's own consultant's opinion, Dr. Levin. There is no mention of Dr. Levin in the district court's opinion. There's no mention of Dr. Levin in Hartford's briefing. But Dr. Levin's report was deemed valid when it was issued in 2017 and dictated the initial approval of the benefit claim. Dr. Levin's report was cited again twice in 2018, and in 2019 when Hartford performed a special investigations unit investigation of Ms. Oye's entitlement to benefits. Yet again, Hartford determined there were no material inconsistencies and the pain complaints were supported. So, Mr. Dubofsky, this is the point on which I get a little bit confused, because you say you acknowledge that the district court's review was to be independent, or de novo, as we love to say that way. But at the same time, you say it was error not to consider the claim history. Those two things seem at odds with themselves, because I don't know what you mean by consider— The point about Dr. Levin I get, I've got a question for Hartford about that. Okay, I understand that. But a failure to consider Dr. Levin's views is different than some sort of like, I don't know, a stopple or claim preclusion flavor to this business about you had to consider the claim history. So I'm not sure what you're saying. In other words, it seems like it's in tension with itself. So I acknowledge the mental gymnastics in this case, and they are confusing. But the point that I'm trying to drive home is that while Judge Chang was free to make an independent decision, in fact it was his obligation to do so, he couldn't do it in a vacuum. He couldn't do it without considering the entirety of the evidentiary record. He couldn't do it without considering this court's precedents. Okay, now that's fair, because if what you're saying is that the legal error, for example, among others, was a complete omission of any consideration of Dr. Levin's views, okay, that's different than saying that he owed some kind of deference or Hartford's prior administrative rulings, you know, stopped him or something. You're not using those words. Those are my words. But there's a flavor of your argument that kind of sounds in that. I acknowledge what Your Honor is saying. And again, I go back to the mental gymnastics can be a little bit confusing, which is why I reiterated the point that I was trying to drive home. Yeah, I mean, look, I'm not faulting you for relying upon claim history. I mean, that is something that is they were the ones that decided. I don't know why. I couldn't figure that out. But they decided to reevaluate her claim. And the other factor is that a key component of Judge Chang's decision was the 2016 functional capacity evaluation, which Hartford had previously rejected. And while the 2016 FCE was given to Hartford's consultants, they didn't give Dr. Levin's report. They didn't give some of the other evidence to the consultants. It seems like what you're saying in advocating for your client is, look, don't lose track of the kind of context and atmosphere of this. She's kind of whipsawed is what you're saying. Precisely. I got it. So at risk of losing my or I guess I still have a little bit of time. And the last point that I want to make is that the outcome of this case should be a restoration of Mizzoy's benefits and not a remand. The status quo prior to the termination of benefits was the payment of benefits for three years. I acknowledge that there has been an intervening event. The change in definition from the any occupation to the own occupation standard. And I acknowledge the Packovich decision from this court. But this record is so clear cut that Mizzoy's condition is permanent based on Hartford's own consultants' opinions and the Social Security finding that she can't do anything and the reality that somebody who is that racked in pain and fatigue would not be able to perform any type of a meaningful job. Nonetheless, a job that would pay her close to $100,000 a year based on the policy terms should be awarded benefits retroactive to when the benefits were terminated in 2020 and brought up to the present. Thank you. Thank you, Counsel, for my time. Ms. Herring. Thank you, Your Honor. May it please the court, Jacqueline Herring on behalf of Hartford Life and Accident Insurance Company. In this case, the district court did exactly what the district court is supposed to do. The district court weighed the evidence, made credibility findings, and entered an independent decision as to Ms. Oye's claim for benefits. The district court decided adversely to Ms. Oye. She disagrees with that, but that's not clear error as required to reverse the district court's opinion. To a lot of the questions that were raised in Counsel's initial argument, yes, the entire argument is really an attempt to create burden-shifting presumptions. Hartford did something in the past, so the district court, rather than being independent, must somehow be bound by that or overcome a presumption that what Hartford did in the past is what the district court's required to do. And what's interesting is if we had the exact reverse, if we were arguing, well, Hartford denied the claim, so the judge should certainly deny the claim now because that's what Hartford did before, that argument goes nowhere. And Ms. Oye's argument, for the same reasons, goes nowhere. This is an independent decision, and the case law is very, very clear that what the district court is supposed to do is make an independent decision, not look at what was or was not done in the past. There was no evidence that was, quote, discredited. Nobody ever discredited the FCE. Hartford weighed it differently back then than the district court did in making its independent decision. The district court made a very thorough opinion here. Was the district court required to at least briefly state why it found Dr. Levin's report unpersuasive or mention Dr. Levin? It seems to be one of the stronger arguments that the appellants offered. And I think the problem with going down that road is then we set a standard whereby under Rule 52, if a district court doesn't address absolutely every single piece of evidence in the record, then the district court has created a clear error. And that's problematic because then the next time we're here, it's, well, there was that one medical record from 2015. Judge didn't rebut it in his Rule 52 opinion. Therefore, he's committed a clear error. And again, you know, the law is clear under Rule 52 that the judge does not need to address every single piece of evidence. What the judge needs to do is lay out the reasoning for what the decision was. And the district court did that very clearly here. And what the district court did was plausible. Expert opinions that have detail. I don't think you're going to, I think you're on solid ground saying we're not going to impose an opinion writing requirement where you have to like, you know, chronologically type in the medical record or something like that. But the point that Mr. Dubofsky is making is that, in going to Judge Brennan's question, is that the omission of any discussion of Dr. Mark Levin's prior view is pretty material here. So how do you respond to that? Forget the whole opinion writing business. It's just, it's a material omission is the point that your adversary is making. And I think, again, anything can be taken as a material omission if a party thinks it's something that supports their case that the district judge doesn't address. But I think what's more important is that what the district court was looking at is at the time the claim closed, in September 2020, what does the evidence tell us? And all three of the physicians consulted by Hartford that the district court found detailed and persuasive addressed improperly. So is that another way of saying Levin's view goes back to what, like 16 or something? 2017. 2017? Yes. And Dr. Fung, Dr. Clinton, Dr. Singe, they were all specifically asked, because of counsel's criticisms during the administrative process, they were specifically asked, is there any evidence of improvement? Has anything changed since 2017? And all three of them pointed to specific information in the record, documented medical findings that showed improvement. And those were detailed in each of those reports, and I think that's one of the reasons that the district court found those reports persuasive. They went through some of the chronology for the district court, went through what the findings were, addressed specific questions like, what's different from 2017 now to 2020? And so those questions were answered. But to require, again, that the district court essentially rebut everything that's in the record, again, is that burden-shifting presumption that we're looking at here. And I think a lot of this stems from we're usually here on, or we used to be years ago, on arbitrary and capricious cases, where it is all about, what did Hartford do? What didn't Hartford do? Did Hartford do the right thing? And that's now being imposed on the district judge. If Hartford did this, the district court has to do that as well. If Hartford didn't rely on that 2016 FCE, the district court is somehow precluded from considering it, even though the district judge is charged with making an independent decision, and that 2016 FCE is in the record. And in addition to the actual physical findings from that FCE, there were a couple other significant points in that FCE that impacted the district court's finding. And some of that was that her physical complaints were just not consistent with the evidence. There was considerable question as to reliability and accuracy of pain reports. And yet her entire case relies on the credibility of her pain reports. In counsel's argument, again, there was this discussion of, well, fibromyalgia, it's not going to have all these other things, and you're not going to see various findings. But the distinction is we're not talking about what's required to diagnose fibromyalgia. We're talking about functional impairment resulting in disability. So the absence of physical findings of, for example, if someone is truly so disabled that they're virtually bedridden, which is something that she has claimed, you would expect there would be some atrophy, perhaps some lack of mobility in joints. You would expect to see functional and physical findings that were showing that impairment in disability. And this court has said a number of times that although pain itself can't be measured, the functional impact of pain can be. That's what the FCE did, and that's what the reference to the various physical findings are about. Are we seeing a physical manifestation of an impairment that would preclude occupational duties? That's what the physical findings are about. Does she or does she not have fibromyalgia based on trigger points? That's a non-issue. Whether she does or does not have fibromyalgia doesn't qualify her for benefits under the plan. She has to have functional impairment. And the district court very clearly marched through which opinions were persuasive, which were not. And the district court also alternatively found that her mental conditions were clearly a causative factor here. And the plan limits to 24 months conditions that are based on mental impairments. And it doesn't matter whether those mental impairments resulted from something underlying physical, whether those mental impairments are resulting in physical manifestations. The point is if there is a mental illness that is creating the disability, then that's capped at 24 months and no more benefits are payable. And again, the district court went through very clearly what the evidence was of that. So is your point with that that she was paid for that period of time, and therefore she can't be disabled beyond that period of time? That is correct. And also, as the district court pointed out, Ms. Oist specifically said, you cannot consider any of my mental conditions. And we see more and more claimants doing that because then they can withhold records that might shed some light on what the actual condition is. And so what the district court found was that what you're telling me is I need to base solely on fibromyalgia. Have you proven to me that you cannot do your job? The district court said no. That finding is plausible based on the record, was not clearly erroneous, and should be affirmed. Thank you, counsel. Anything further, Mr. Dubosky? The problem with Ms. Herring's mental impairment argument is that Hartford never claimed that Ms. Oist was suffering from a mental impairment. They never notified Ms. Oist that her benefits would be limited on account of that. And, in fact, Dr. Levin said, and I quote, Ms. Oist's pain and cognitive issues play a major role as to her psychiatric and psychological issues. The treating psychiatrist, Dr. Al-Bahari. I don't think recitation of the evidence is helpful. Thank you, counsel. Thank you, Your Honor. Case is taken under advisement.